UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARK K.,

            Plaintiff,

      v.                                                              **DECISION AND ORDER**

                                                                                     20-CV-833S

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____

        1.        Plaintiff Mark K.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied his applications for supplemental security income and disability insurance benefits under Titles II and XVI of the Act. (Docket No. 1.) This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

        2.        Plaintiff protectively filed his applications with the Social Security Administration on May 8, 2017; thus, his claims are under the post-March 2017 evaluation standards for medical opinions, 20 C.F.R. §§ 404.1520c, 416.920c. Plaintiff alleged disability beginning June 10, 2013, due to cervical and lumbar degenerative disc disease and obesity. Plaintiff's applications were denied, and he thereafter requested a hearing before an administrative law judge ("ALJ").

        3.        On March 11, 2019, ALJ Martha Bower held a video hearing at which Plaintiff—represented by counsel—and Vocational Expert Frank Fazzolari appeared and

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

Case 1:20-cv-00833-WMS   Document 14   Filed 09/16/21   Page 2 of 16


testified.  (R.[2] at 48-77.)  At the time of the hearing, Plaintiff was 39 years old with a high school education.  Plaintiff worked as a terminal operator, a composite job with elements of a gauger (medium exertion work) and material handler (heavy work).  (R. at 29.)  Plaintiff had not engaged in substantial gainful activity since the June 10, 2013, onset date.

4.     The ALJ considered the case *de novo* and, on April 3, 2019, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, he filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.     Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 10, 12.)  Plaintiff filed a response on April 30, 2021 (Docket No. 13), at which time this Court took the motions under advisement without oral argument.  For the reasons that follow, Plaintiff's motion is denied, and Defendant's motion is granted.

6.     A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's April 3, 2019, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 389, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8. The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act. See 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing whether a claimant is disabled. 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

9. The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original); see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10. Although the claimant has the burden of proof on the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Yuckert, supra, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984). The final step is divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11. The ALJ analyzed Plaintiff's claim for benefits under the process set forth above. At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset date of June 10, 2013. (R. at 19.) At step two, the ALJ found that Plaintiff has the following severe impairment: cervical and lumbar degenerative disc disease and obesity. Id. Plaintiff was 6'1" tall and weighed 410 pounds with a body mass index of 66[4] (R. at 52, 53, 611). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Id. at 21.

12. Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with limitations. The ALJ found that Plaintiff could occasionally balance, stoop, crouch, crawl, and climb of ramps, stairs, ladders, scaffold. The ALJ also found that Plaintiff is to avoid concentrated exposure to hazards, such as unprotected heights or dangerous equipment. (R. at 21.)

13. At step four, the ALJ found Plaintiff can perform his past relevant work because his work as a terminal operator was performed at a light exertional level. (R. at 29.)

14. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 29-30.) Since Plaintiff had additional limitations that impede fully performing light work, the ALJ posed hypotheticals to the Vocational Expert of a claimant like Plaintiff in age, education, and work experience. The expert concluded that, at a light exertional level, this hypothetical claimant could perform such work as an assembler (Dictionary of Occupational Titles

---

[4]The ALJ found that the record did not demonstrate that Plaintiff's obesity impacted him such that it met or equaled the requirements for a Listing, R. at 21.

"DOT" 729.687-010)), sorter, or inspector (DOT 559.687-074), while at a sedentary level, this hypothetical claimant could perform such work as an assembler (DOT 713.687-018), polisher, and inspector (DOT 669.687-014). Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 30-31.)

15. Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ rejected the more restrictive medical opinions in the record. He claims the ALJ did not properly evaluate medical opinions of treating sources (Drs. Steven Stone and Safeya Muhammad) and consultative examiner (Dr. David Brauer) and erroneously relied primarily on the findings of non-examining state agency reviewer, Dr. G. Feldman. Plaintiff also argues that the ALJ did not state the persuasiveness of the medical opinions. For the reasons that follow, this argument is rejected.

16. Plaintiff filed his claim after March 27, 2017; hence it is governed by the revised medical opinion evaluation rules effective for March 2017 (and thereafter) filed claims, 20 C.F.R. § 404.1520c (Docket No. 10, Pl. Memo. at 19; Docket No. 12, Def. Memo. at 6-9; see Docket No. 13, Pl. Reply Memo. at 1).

17. The revised medical opinion evaluation rules abolished the concept of treating sources and the treating source rule, John F. v. Commissioner, No. 20CV1003, 2021 WL 3851988, at *3 (W.D.N.Y. Aug. 27, 2021) (Wehrman, Mag. J.) (on consent). Instead of giving deference or specific weight to any medical opinion or retaining a perceived hierarchy of medical sources, Victor B. v. Commissioner, No. 20CV1154, 2021 WL 3667200, at *2 (W.D.N.Y. Aug. 17, 2021) (Geraci, J.), under the new rules the ALJ considers five factors (supportability; consistency; relationship of the source with the

claimant; medical source's specialization; and other factors) in considering medical opinion evidence, 20 C.F.R. § 404.1520c(c). Supportability and consistency are the most important factors, id. § 404.1520c(b)(2). The ALJ must explains his appeals to supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (Carter, Mag. J.) (on consent), but the ALJ need not explain how the remaining factors were considered, John F., supra, 2021 WL 3851988, at *4.

18. Supportability is "the extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation," Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5833 (Jan. 18, 2017); Melissa F., supra, 2021 WL 3887256, at *6. The more relevant the objective medical evidence and supporting explanation are to support the medical opinion the more persuasive it is, 20 C.F.R. § 404.1520c(c)(1).

19. As for the consistency of a medical opinion to be deemed persuasive, the more that opinion is consistent with evidence from other medical and nonmedical sources, the more persuasive it will be considered, 20 C.F.R. § 404.1520c(c)(2).

20. This Court notes an overlap between these two factors. Both supportability and consistency in part require comparison of the medical opinions with other medical sources, see 20 C.F.R. § 404.1520c(c)(1) and (c)(2).

21. Plaintiff suffered back and neck impairment, which he sought treatment by chiropractor and pain management since a 1997 automobile accident (R. at 22).

Plaintiff's pain was exacerbated when he picked up a child from a car seat and bending down to hand a child his shoes (R. at 531, 779).

22. Dr. Stone stated in Plaintiff's student loan discharge application (dated October 30, 2017, and February 24, 2018), that Plaintiff suffered from cervical and lumbar spinal disease, chronic pain syndrome, and obsessive-compulsive disorder ("OCD") that precluded him from substantial gainful activity (R. at 239, 241, 26). Dr. Stone observed that Plaintiff could not stand or sit for more than one hour and Plaintiff could not lift or walk for more than a short distance (R. at 239, 241). Dr. Stone concluded that Plaintiff was limited to a ten percent "residual functionality" secondary to his spinal disease, chronic pain, and OCD (R. at 241, 26).

23. The ALJ was not persuaded by Dr. Stone's opinion (R. at 26, 27) because the ALJ found it was inconsistent with the totality of Plaintiff's longitudinal record (R. at 27). The ALJ noted that there was no record of Plaintiff receiving treatment for OCD although Plaintiff testified that he did not remember being so advised (R. at 27, 58).

24. As for Plaintiff's back impairment, the ALJ observed that Dr. Stone did not conduct current MRI examination for Plaintiff's 2004 injury (R. at 27) and deferred treatment to Plaintiff's pain management provider (R. at 27). The ALJ states the record contained no sign of clinical abnormalities upon examinations (R. at 27). The ALJ concluded that the record did not support Dr. Stone's functionality analysis (R. at 27). The ALJ also found the opinion inconsistent with Plaintiff's daily activities that Plaintiff told his chiropractor of decorating a Christmas tree, planning to attend a drive-in movie, and pushing a lawn mower (R. at 27).

25.   Plaintiff argues that the ALJ erred in evaluating Dr. Stone's opinion to reject more restrictive opinions (Docket No. 10, Pl. Memo. at 18).  He argues his chiropractor's records supported increased limitation and his reports to his pain management provider of his difficulties (id. at 25; R. at 331-33, 350, 315, 965).

26.   Plaintiff also argues that the performance of daily activities does not necessarily contradict allegations of disabilities (Docket No. 10, Pl. Memo. at 25, quoting Scitney v. Colvin, 41 F. Supp.3d 298, 304 (W.D.N.Y. 2014) (Wolford, J.) (quotation omitted)).

27.   First, as Defendant observes (Docket No. 12, Def. Memo. at 25), Plaintiff does not object to the ALJ's persuasiveness finding for the supportability of Dr. Stone's opinion.  While Dr. Stone's opinion may be consistent with the medical record (cf. Docket Nos. 10, Pl. Memo. at 25, 13, Pl. Reply Memo. at 2), supportability is based upon the objective medical evidence, 20 C.F.R. § 404.1520c(c)(1).  Plaintiff points to his subjective complaints of pain during treatment and his reported abilities (or inabilities) during his examinations (cf. Docket No. 10, Pl. Memo. at 25), subjective aspects of the medical record.  The medical evaluations from Plaintiff's treatment by his chiropractor and pain management source, however, showed no back or neck abnormalities (Docket No. 12, Def. Memo. at 26; R. at 847-66) or diagnosis for OCD (Docket No. 12, Def. Memo. at 25-26; R. at 847-66, 27).

28.   The ALJ thus had substantial evidence for her supportability finding that deemed Dr. Stone's opinion not to be persuasive.

29.   Next, Plaintiff's chiropractor, Dr. Muhammad assessed Plaintiff on March 15, 2019, finding that Plaintiff could walk only less than a city block without rest,

sitting for 5-10 minutes, standing for 0-5 minutes at one time, standing and/or walking for less than two hours, sitting less than two hours in 8-hour workday; need to shift positions at will during workday; need for frequent, unscheduled breaks every 15-30 minutes due to muscle weakness and pain/paresthesia/numbness, needs to be off task 25% or more of the workday and to be absent from work more than 4 days per month due to impairments (R. at 1014-15, 28; Docket No. 12, Def. Memo. at 20).

30.   The ALJ found this opinion to be unpersuasive because it was inconsistent with the totality of the evidence of record and unsupported by the chiropractor's treatment notes (R. at 28), noting that this record revealed Plaintiff's condition remained stable throughout the relevant period (R. at 28; see R. at 319-608, 619-720, 721-842).

31.   Plaintiff argues the ALJ did not consider the supportability of Dr. Muhammad's opinion (Docket No. 10, Pl. Memo. at 20), notwithstanding that opinion was not supported by treatment notes.  Plaintiff claims that the doctor's opinion was supported by Dr. Muhammad's observations that Plaintiff had reduced range of motion with pain radiating to the lower extremities (id.; R. at 1013), citing his Physical Medical Source Statement.  He concludes that remand is required when ALJ failed to adequately discuss supportability (Docket No. 10, Pl. Memo. at 20), see Rivera v. Comm'r, No. 19CV4630(LJL)(BCM), 2020 WL 8167136, at *17 (S.D.N.Y. Dec. 30, 2020) (Moses, Mag. J.) (Report & Recommendation) (gaps between doctor's opinion and observations, examination results, and other clinical findings go to supportability and consistency, requires remand, citing Andrew G. v. Comm'r, No. 3:19-CV-0942, 2020 WL 5848776, at *9 (N.D.N.Y. Oct. 1, 2020) (Lovric, Mag. J.)), adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021).  Defendant counters that the ALJ properly considered the supportability

for the opinion, noting Plaintiff's relative stable condition (Docket No. 12, Def. Memo. at 21-22; R. at 28).

32. As for supportability, the ALJ found that Dr. Muhammad's noted did not document objective functional limits (R. at 28), concluded that the opinion was unsupported by longitudinal medical record (R. at 28). The ALJ also noted the absence of imaging in the chiropractic record (R. at 28; Docket No. 12, Def. Memo. at 21), save a November 6, 2014, x-ray (R. at 490; Docket No. 10, Pl. Memo. at 23; Docket No. 12, Def. Memo. at 22).

33. The ALJ met the obligation to explain her approach as to supportability by ALJ reviewing the chiropractic record, including Dr. Muhammad's examination.

34. The ALJ also focused on the consistency of Dr. Muhammad's opinion with the chiropractic record (R. at 26).

35. Plaintiff next asserts the ALJ relied upon misrepresented or outright incorrect information in finding Dr. Muhammad's opinion was not consistent with the medical record (Docket No. 10, Pl. Memo. at 20-21). Plaintiff points to error of an independent chiropractor that the attending chiropractor did not document Plaintiff's baseline objective functional condition prior to the alleged exacerbations (R. at 28, 999; Docket No. 10, Pl. Memo. at 21). Plaintiff also contends that the ALJ did not note chiropractor Dr. Munroe's treatment of Plaintiff (Docket No. 10, Pl. Memo. at 21) and frequent exacerbation following Plaintiff's exertions (id. at 22).

36. Defendant, however, argues that Dr. Muhammad's opinion was inconsistent with Plaintiff's longitudinal medical record (Docket No. 12, Def. Memo. at 23).

37.     Plaintiff had decades of chiropractic treatment following a 1997 motor vehicle accident (R. at 22).  The ALJ reviewed this record of treatment and thus determined that Dr. Muhammad's opinion was inconsistent with that record.  Plaintiff had episodic treatments following injury or exacerbation while engaging in lifting his children, lifting shopping bags, lifting gas cans for mowing the lawn, or decorating a Christmas tree (R. at 531, 489, 499, 680, 337, 372).

38.     Plaintiff's chiropractic treatment record does not support the limitations opinion Dr. Muhammad rendered.  Review of the chiropractic treatment notes that Plaintiff cites (Docket No. 10, Pl. Memo. at 21; Docket No. 13, Pl. Reply Memo. at 2) indicates that Plaintiff was diagnosed with fair prognosis from June 2013 to December 2016 (R. at 532, 515, 501, 491, 419, 374) becoming guarded in May 2017 to April 2018 (R. at 339, 682, 619).  For those latter prognoses, both Drs. Kenneth Munroe and Mohammad of Munroe Chiropractic, PC, noted that Plaintiff's walking, lifting, bending over, reaching overhead, and standing were hindered (R. at 337, 680, 617).

39.     While Plaintiff's condition appears to have worsened, his treatment was episodic after Plaintiff exacerbated his neck and back while performing a few household activities.  The record does not reveal regular treatment showing Plaintiff's condition worsening.  Plaintiff also continued to perform the activities noted above that lead to exacerbation, although he testified that he mowed the lawn and shopped for groceries with difficulties (R. at 57, 65, 66-67).

40.     Therefore, there is substantial evidence regarding the inconsistency of Dr. Mohammad's opinion with the chiropractic record to support the ALJ's persuasiveness finding.  Plaintiff's objection on this ground is rejected.

41.     Plaintiff also relies upon the observations of consultative examiner, Dr. Brauer, who examined Plaintiff on July 11, 2017 (Docket No. 10, Pl. Memo. at 26-28; R. at 609-14).  Dr. Brauer found that Plaintiff had moderate to marked limitations sitting, standing, walking, or standing for long periods of time, pushing, pulling, lifting, or carrying heavy objects (R. at 609-14, 613, 26).

42.     The ALJ, however, found this assessment to be partially persuasive, rejecting in part because the evidence does not support Dr. Brauer's marked limitation observation because the doctor did not quantify or qualify what constitutes a long period or a heavy object (R. at 26; cf. R. at 613).

43.     Plaintiff faults the ALJ for giving a conclusory single sentence discussion (cf. R. at 26) of the consistency of Dr. Brauer's opinion with the medical record (Docket No. 10, Pl. Memo. at 27; see Docket No. 13, Pl. Reply Memo. at 2), see Morgan v. Colvin, 592 F. App'x 49, 50 (2d Cir. 2015) (summary Order), and not explaining why that opinion is inconsistent with the medical record (Docket No. 10, Pl. Memo. at 27).  Plaintiff claims that the marked limitation opinion was supported by abnormal examination findings for reduced squat, morbid obesity (R. at 52, 53, 611, 612), and restricted range of motion (Docket No. 13, Pl. Reply Memo. at 2; R. 612-13).

44.     This Court disagrees; the ALJ provided adequate discussion of the consistency and supportability of Dr. Brauer's opinion (see Docket No. 12, Def. Memo. at 28-29).  Again, Plaintiff does not challenge the supportability assessment (see id. at 29). The ALJ criticized that opinion for not quantifying Plaintiff's limitations (R. at 26). Defendant points out Plaintiff's medical record showed only "relatively mild baseline objective findings of record, Plaintiff's conservative treatment, and his high level of activity

13

(including prior work activity)," thus more restrictive findings are not warranted (Docket No. 12, Def. Memo. at 29). From Dr. Brauer's assessment, he noted no acute distress, normal gait, and normal stance, that Plaintiff did not require assistive devices or assistance to mount or dismount the examination table (R. at 611). Longitudinal prognosis for Plaintiff was stable (R. at 613).

45.   The portion of the functional assessment from Dr. Brauer that the ALJ accepted is limitations in full squatting or bending she found were consistent with the objective medical evidence (R. at 26).

46.   Thus, Plaintiff's objection to the consideration of Dr. Brauer's opinion is rejected.

47.   Plaintiff finally objects to the ALJ's reliance primarily upon the opinion of non-examining agency reviewer Dr. G. Feldman of July 24, 2017 (Docket No. 10, Pl. Memo. at 29-30; R. at 83, 86). Dr. Feldman found that Plaintiff was limited to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and/or walk for about 6 hours of 8-hour workday, sit for about 6 hours of 8-hour workday; stoop and crouch occasionally; need to avoid concentrated exposure to hazards, such as machinery and heights (R. at 83-84). The ALJ found Dr. Feldman's opinion to be persuasive because it reviewed Plaintiff's medical record and Dr. Feldman's opinion was consistent with the record, with the evaluation of independent medical examiner, Dr. Steven Weinstein (R. at 25; cf. R. at 1006-11; see Docket No. 12, Def. Memo. at 10). The ALJ next considered the medical record after Dr. Feldman's assessment and found that Plaintiff did not have significant worsening (R. at 25).

48.     Plaintiff argues that the non-examining state agency evaluator's opinion deserves less weight because that doctor has not examined Plaintiff and relies only upon the "cold medical record" (Docket No. 10, Pl. Memo. at 29; see Docket No. 13, Pl. Reply Memo. at 3-4).

49.     Plaintiff, however, is applying the pre-March 2017 standard that weighs opinions based upon the source.  The standards for Plaintiff's post-March 2017 application, however, is whether the medical opinion (regardless of its source) is supported and consistent with the medical record, 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations emphasize supportability and consistency rather than the examining relationship, Victor B., supra, 2021 WL 3667200, at *3.

50.     The ALJ correctly refused to defer or give specific evidentiary weight to any medical opinion (R. at 25), including that of Dr. Feldman.  Secondary factors such as a treatment relationship is one that the ALJ need not articulate how it was applied, 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2) (Docket No. 12, Def. Memo. at 18-19).  For post-March 2017 applications such as Plaintiff's, there is no hierarchy among medical sources, 82 Fed. Reg. at 5833 (id. at 19), including non-examining sources.  Therefore, the ALJ could find Dr. Feldman's opinion to be persuasive so long as it was supported and consistent with the medical record and the ALJ so finds.

51.     There is support for Dr. Feldman's opinion because it is based on medical record as of the July 2017 file review.  That opinion also is consistent with medical record before and after that review.

52.     Plaintiff's objection to reliance on Dr. Feldman's state agency opinion is rejected.

53. Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:     September 16, 2021
           Buffalo, New York


                                           s/William M. Skretny
                                          WILLIAM M. SKRETNY
                                        United States District Judge

53.     Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is denied.

IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 10) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 12) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:      September 16, 2021
            Buffalo, New York


                                    s/William M. Skretny
                                   WILLIAM M. SKRETNY
                                 United States District Judge